**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br>MERCURY CAPITAL ADVISORS GROUP GP, LLC<br>Debtor | **Chapter 7**<br>**Case No. 24-12326 (DSJ)** |
| In re:<br>MERCURY CAPITAL ADVISORS GROUP, LP<br>Debtor | **Chapter 7**<br>**Case No. 24-12327 (DSJ)** |
| In re:<br>MERCURY CAPITAL ADVISORS, LLC<br>Debtor | **Chapter 7**<br>**Case No. 24-12328 (DSJ)** |

### OBJECTION TO THE CHAPTER 7 TRUSTEE'S APPLICATION TO EMPLOY AMINI LLC AS SPECIAL LITIGATION COUNSEL TO CHAPTER 7 TRUSTEE

TO THE HONORABLE DAVID S JONES,
UNITED STATE BANKRUPTCY JUDGE

Investcorp International, Inc. (the "Company") respectfully objects to the application by Yann Geron, in his capacity as Chapter 7 trustee (the "Trustee"), for the appointment of Amini LLC as special litigation counsel. Dkt. 40 (the "Motion").

The Company is the largest creditor of the Debtors' estates in the above captioned matters. Accordingly, it has worked cooperatively with the Trustee to maximize the limited recovery of these estates, which the Trustee has repeatedly acknowledged throughout this process. Unfortunately, this case has languished for almost 18 months with little discernable progress despite the availability of various known sources of potential recovery.

In particular, highlighted herein are three main sources of recovery that the Trustee has so far neglected or made little progress pursuing. *First*, as reflected in the Form 206A/B filed by the Debtors, the estates are estimated to be entitled to $4,266,000 under an agreement with WestCap

1

Management, LLC.  *Second*, the estates also have the right to collect placement fees from up to 25 other clients, based on separate agreements with each client.  Such agreements require periodic follow up with each underlying client to identify and determine any crystalized placement fees due to the Debtors.  The value of these placement fees is unknown but could potentially run into the millions of dollars.  *Third*, the Debtors have significant counterclaims against Alan Pardee, their former Managing Partner, that were filed in the Supreme Court of the State of New York.  The Debtors have demanded an award of compensatory and consequential damages believed to be not less than $4 million.  *See Pardee v. Mercury Capital Advisors Group GP, LLC, et al.*, (Index No. 650693/2021).  The Trustee acknowledged over a year ago that the "Counterclaims [] appear substantive and . . . must be administered by the Trustee in due course."  Dkt. 30 ¶ 19.  Yet the Trustee has inexplicably failed to advance those claims since that time.  Doing so would be particularly straightforward at this juncture.  The remaining counterclaims have survived a summary judgment challenge from Mr. Pardee, and a jury recently issued a verdict on the merits disposing of claims that Mr. Pardee had asserted against the Debtors.

Rather than pursue these obvious sources of recovery, the Trustee has instead requested the appointment of special litigation counsel with a fruitless and misdirected focus to "investigate circumstances surrounding the commencement of the Debtors' cases, including whether their commencement adversely impacted the value of their estates as compared to other bankruptcy alternatives" as well as "prepetition transactions between [the Company] and the Debtor, including liens asserted, the overlap between the management of the Debtors and [the Company], unanswered questions concerning the Debtors' books and records, and prepetition transfers made to [the Company]."  Motion ¶ 7.

The course of action that the Trustee appears determined to pursue is destined to waste time and money, all to the detriment of the Debtors' estates and ultimately its creditors and other stakeholders. The Trustee has already had full access to extensive information from the Debtors. For example, shortly after the Chapter 7 filing, the Trustee appointed reputable independent financial accountants, who were granted full and unfettered access to the Debtors' books and records as well as full and continuing access to former employees and executives of the Debtors. The accountants have had various calls with such employees and the opportunity to question any transaction with the Debtors. To the best of the Company's knowledge, the accountants have not identified a single instance of improper or inaccurate maintenance of records. The accountants also conducted an in depth, independent review of the valuation methodology underlying the Company's prepetition purchase of certain receivables from the Debtors and, to the Company's knowledge, were satisfied with such methodology.

In addition, the Debtors' U.S. broker-dealer—which received all revenues on behalf of the Debtors—had its financial records audited during each year of operation by a highly reputable and respected independent accounting and audit firm, which consistently verified the accuracy of the books and records. And up to the date of the Chapter 7 filing, its financial statements were also submitted annually to regulatory authorities, including the U.S. Securities and Exchange Commission.

Despite all of this, the Trustee has failed to articulate any coherent theory of impropriety, other than the vague allusions contained in the Motion. And those theories are untethered to the facts of this case, as the Company has explained in writing and verbally to the Trustee. For example, the Trustee is apparently still continuing to pursue the erroneous theory, which the Company had dispelled in March 2026, that the Company's blanket lien on the Debtors' assets

only apply to certain of Debtors' receivables. This flawed theory emanates from the Trustee misconstruing a revised UCC statement that the Company filed in February 2021 as allegedly limiting the scope of the Company's lien. That understanding is simply incorrect. As the Company has explained, nothing in the February 2021 amendment limits the Company's lien to certain receivables. Rather, the February 2021 amendment simply states, on its face, that it was filed to notify parties in interest of a "collateral change." That collateral change was necessitated to effectuate a sale of certain (encumbered) receivables to the Company by deleting "certain collateral" (*i.e.*, the present and future rights in certain receivables) from the applicable security package. But all other collateral—other than the "certain collateral" deleted therein—clearly remained subject to the Company's blanket lien.

The assets of these Chapter 7 estates (in particular any receivables owned by the Debtors) continue to degrade every day that the Trustee delays in collecting them. The Company is concerned that the most recent application by the Trustee is prompted by the Trustee's persistent misguided focus that will continue to waste further time and energy, and will only further delay collection of actual sources of recovery while costing the estates a hefty sum in legal fees without a concurrent, more immediate, return of benefit through recovery of assets.

**CONCLUSION**

For the foregoing reasons, the Company respectfully objects to the Trustee's Application to Employ Amini LLC as special litigation counsel.

Dated:  May 27, 2026

By:     _/s/ Mitchell A. Karlan_____
        Mitchell A. Karlan
        Adam J. Jantzi
        GIBSON, DUNN & CRUTCHER LLP
        200 Park Avenue
        New York, NY 10166
        (212) 351-4000
        mkarlan@gibsondunn.com
        ajantzi@gibsondunn.com

        *Attorneys for Investcorp International, Inc.*