# Exhibit 1

Mitchell A. Karlan
Retired Partner
T: +1 212.351.3827
M: +1 917.370.5383
mkarlan@gibsondunn.com

July 15, 2026

<u>VIA E-MAIL</u>

Avery Samet
Jeffrey Chubak
Amini LLC
131 West 35th Street, 12th Floor
New York, NY 10001

**Re:** **Mercury Capital Advisors Group GP, LLC, Debtor; Case No. 24-12326-dsj**
**Mercury Capital Advisors Group, LP, Debtor; Case No. 24-12327-dsj**
**Mercury Capital Advisors, LLC, Debtor; Case No. 24-12328-dsj**

Dear Counsel:

We write on behalf of our client, Investcorp International Inc. ("Investcorp"), in response to the Trustee's June 26, 2026, Discovery Requests (the "Discovery Requests" or "Requests") and to our subsequent call on July 8, 2026.

On our call, you recognized the burden of your document requests to Investcorp and expressed interest in minimizing the same. Investcorp is appreciative, and below are our specific requests for you to consider to accomplish this aim. As a preliminary matter, it appears that you have not yet had a chance to fully take stock of the documents that are already in your possession or to which the Trustee may already have access. We understand that because Amini LLC has been newly appointed, that process may be ongoing. The Discovery Requests provide that "Trustee is not seeking documents already in the Trustee's custody." Dkt. 50 ¶ 15. Counsel confirmed this position during our call. However, this portrayal is factually inaccurate, and the Discovery Requests improperly shift the burden to Investcorp to sort through Debtors' documents that we understand were already collected by and/or available to the Trustee more than eighteen months ago.

We have previously highlighted to the Trustee that during the course of the Debtors' pre-petition operations in the ordinary course of business, the Debtors operated independently of Investcorp, and the operations of the firms were not integrated in any way. The Debtors had their own management and personnel (aside from the limited secondment arrangements), maintained their own books and records, had their own independent email systems, network folders and documents, and IT infrastructure. At no time during the course of the Debtors' ongoing operations did Investcorp have access to Debtors' email system, network, or financial records

(other than what is typically shared by a company with its shareholders and lenders), or have custody or control of Debtors' emails or corporate records.

Investcorp has no way of knowing what measures the Trustee has taken or failed to take in securing and collecting the documents that are part of his estate. And to our knowledge, neither he nor anyone working on his behalf ever made a request for documents or to access information that was refused by former employees of Mercury. To the contrary, there has been various correspondence among former Mercury employees and the Trustee or his representatives regarding a variety of topics, including Debtors' records and data. Accordingly, Investcorp requests that Counsel review the Debtors' files in Trustee's possession, custody, or control, before proceeding to make sweeping, burdensome demands on Investcorp for information. Nevertheless, in the spirit of cooperation, Investcorp will attempt to assist with certain documents below when they present minimal burden. To that end, Investcorp can make its employees who were formerly employed by Mercury (acting in such capacity) available to provide some reasonable assistance up front, to the extent needed to give the Trustee some preliminary familiarity with the information in the Trustee's possession. Investcorp's willingness to assist is in no way an admission that any request is valid or that Investcorp has any obligation to produce information that the Trustee would be expected to produce directly given he already has it or has the ability to obtain it from the Debtors' estates.

Investcorp's position on each of the specific Requests is laid out below:

Documents Available to Trustee From Debtors: Document Requests 1, 2, 3, 5, 6, 7, 8, 11, 12, 17, 18, 19, and 20 call for documents that should be available to Trustee from the Debtors' files and the Trustee's previous document collection efforts. Accordingly, Investcorp asks that you please review the files already in the Trustee's possession or that the Trustee has the ability to access.

Investcorp continues to be surprised that the Trustee has been unable to locate the documents you have requested. Debtors' documents and emails have always been maintained on third-party cloud-based servers. In particular, RFA and Smarsh (which you mentioned on our call) which served as Debtors' IT and network services provider and email archiving provider, respectively, are the primary repositories for Debtors' files and emails. As the owner of the Debtors' estates, the Trustee has always had the right and ability to access such files, if he has not already sought to do so. These providers should be able to grant the Trustee (or you) access to the Debtors' documents and emails if they are contacted.

If the issue is that the Trustee cannot gain access from RFA and Smarsh directly, Investcorp can offer an alternative. Prior to the Chapter 7 filing, a former Mercury employee (and at no time an Investcorp employee) who oversaw the Compliance function, requested that both RFA and Smarsh create backup copies of Debtors' files, which Investcorp understands were obtained to satisfy regulatory record-retention requirements. While these back-ups have been retained merely for compliance purposes, they may contain some of the extensive information you are seeking. Please advise if you are unable to access the primary source through RFA and/or

Smarsh and would like to obtain the drives containing those back-ups, and Investcorp can ask the former Mercury employees (acting in such capacity) to send them to you. Please note, however, that to Investcorp's knowledge these drives have never been accessed by Mercury and their contents have not been verified. Therefore, it seems prudent for the Trustee (and you) to rely on the primary source of Debtors' files, and obtain them from RFA and Smarsh.

Document Request 4: Request 4 seeks Debtors' bylaws. As we explained on the call, the Debtor entities are organized as Limited Liability Companies and Limited Partnerships. They do not have bylaws.

Document Request 5: To the extent Request 5 seeks *Investcorp's* code of ethics or conduct, that information is not relevant.

Document Requests 7 and 8: Requests 7 and 8 seek documents and communications concerning the decision to commence Debtors' bankruptcy cases and alternatives considered by Debtors. As stated above, these files are more readily available to Trustee from Debtors' files. They are also likely available to Trustee from the Debtors' counsel, Katten Muchin Rosenman LLP ("Katten"). During our call, you confirmed that you had received a production from Katten. Investcorp asks that you review those files as the Debtors retained their books, records and emails, independent of Investcorp, in the ordinary course of business.

Document Request 9: Request 9 seeks documents concerning the valuation of Debtors. It is unclear how a valuation of the Debtors has any relevance to whether the loan and receivables transactions that are the subject of your Discovery Requests were made on fair terms.

Document Request 10: Request 10 seeks documents concerning placement or participation fees earned by the Debtors that were collected or received by Investcorp—presumably as a result of the receivables purchase transaction. Investcorp will search for readily available documents concerning such fees and produce them.

Document Request 11: Request 11 seeks documents and communications related to the Debtors and Investcorp's international affiliates. During our call, you clarified that this request is limited to communications between the Debtors and Investcorp's international affiliates rather than any documents related to the Debtors and Investcorp's international affiliates. Even with that limitation, it is unclear how such information is relevant to the loan and receivables transactions that are the subject of your Discovery Requests. Nevertheless, all communications between Investcorp employees and Mercury employees should be contained in Debtors' files. Investcorp asks that you search there for the information you require instead of burdening Investcorp with this request.

Document Request 13: Request 13 seeks minutes from meetings of Investcorp's board of directors concerning any of the Debtors. Investcorp will search for and, if readily available, produce any meetings minutes insofar as they relate to the loan or the receivables transactions that are the subject of your Discovery Requests.

<u>Document Requests 14, 15, and 16</u>:  These Requests seek documents and communications concerning Mercury's employment of any Investcorp employees, Investcorp's employment of any of Mercury's employees, and services provided to Debtors by Investcorp employees.  During our call, we proposed to respond to these Requests with a chart listing the employees and the dates of their employment.  You responded on July 14, 2026 that you would prefer responsive documents.  Investcorp will search for the relevant agreements and provide them.

<u>Document Request 17</u>:  Request 17 seeks financial statements concerning the Debtors, whether audited or unaudited, covering the 2020–2024 fiscal years.  During our call, you narrowed this request to Investcorp's financial statements concerning the Debtors.  In your July 14 communication, you confirmed that this can be narrowed to include only the Debtors' financial statements and only those not already produced.  As described above, Investcorp believes all such statements should be among the Debtors' documents to which the Trustee already has access.

<u>Document Request 18</u>:  Request 18 seeks communications of individuals who maintained email addresses with @investcorp.com and @mercurycapital.com domains.  During our call, you clarified that you are seeking communications only from individuals who maintained email addresses using *both* domains.  Of the 30–40 individuals who Mercury employed over the course of its operations, Investcorp is aware of only three such individuals:  John Franklin (former Managing Partner); Matt Cantore (former Vice President, Finance); and Masashi Hirose (former Partner, Distribution-Japan).  In your July 14 communication, you agreed to limit this to communications concerning the Debtors.  Investcorp also believes that the Debtors' emails to which the Trustee has or should have access will show inbound emails from such individuals, as well as (more broadly) any other Investcorp employees (e.g., individuals who maintained an email with only an @investcorp.com domain).  As stated above, please refer to the documents the Trustee has or has the ability to obtain from the Debtors' estates.

<u>Document Request 20</u>:  Request 20 seeks documents concerning Investcorp's document retention policy or protocol concerning the Debtors' documents.  As stated above, the Debtors' files are in the Trustee's possession, custody, or control.  Investcorp does not know what measures the Trustee has or has not taken to preserve the documents in his estate.  Investcorp does not have document retention policies for the Debtors' files because Debtors maintained their own self-imposed policies, consistent with their operations independent from Investcorp.  We have explained the Trustee's misunderstanding about the relationship between the Debtors' and Investcorp in our June letter addressed to the Trustee, which we attach hereto as **Exhibit A** in case you did not have the background.

\* \* \*

In light of the above, and particularly in light of Investcorp's willingness to work cooperatively to assist in identifying documents, Investcorp believes another extension of time to respond to the motion that you filed is appropriate so that we do not waste resources responding to your demands.

**GIBSON DUNN**

Sincerely,

*/s/ Mitchell A. Karlan*

Mitchell A. Karlan

# Exhibit A

Mitchell A. Karlan
Retired Partner
T: +1 212.351.3827
M: +1 917.370.5383
mkarlan@gibsondunn.com

# GIBSON DUNN

Client: 03263-01707

June 15, 2026

<u>VIA E-MAIL</u>

Yann Geron
Geron Legal Advisors
370 Lexington Avenue, Suite 1208
New York, NY 10017

**Re:    Mercury Capital Advisors Group GP, LLC, Debtor; Case No. 24-12326-dsj
Mercury Capital Advisors Group, LP, Debtor; Case No. 24-12327-dsj
Mercury Capital Advisors, LLC, Debtor; Case No. 24-12328-dsj
<u>Confidential Settlement Communication Subject to FRE 408</u>**

Dear Mr. Geron:

I write on behalf of Investcorp International, Inc. ("Investcorp") in response to a number of inaccuracies contained in your Reply in Support of Application to Employ Amini LLC as Special Litigation Counsel to Chapter 7 Trustee, filed on June 11, 2026.  (the "Reply")

It is extremely disappointing that despite our efforts to speak with you, you continue to evade a conversation that could have readily clarified and set aside your misconceptions.  Yet despite our intentions and Investcorp's good faith interactions with you and your team since your appointment as Trustee, you persist in making false allegations and purposely seek to not only undermine these combined efforts, but to paint an untrue picture of the facts, to overshadow your office's delayed handling of this bankruptcy petition and your inadequate diligence of the Debtors' estate records.

Our frustration is exacerbated by the fact that this is not the first time you have ignored the information available to you.  Your January 10, 2026, letter was similarly inflammatory and made allegations based on a complete misunderstanding and/or disregard of the facts.  We highlighted these misunderstandings during our call with you earlier this year and in our follow-up correspondence on March 10, 2026.  Both your January 10 letter and your Reply were unnecessary, and the inaccuracies could have been easily avoided had you extended the courtesy to speak with us.  In advance of the upcoming June 16 hearing, we write to once again correct the record.

During the course of the Debtors'[1] pre-petition operations in the ordinary course of business, the Debtors operated independently of Investcorp, and the operations of the firms were not integrated in any way.  The Debtors had their own management and personnel (aside from the limited secondment arrangements, which were well documented and of which you were fully aware), maintained their own books and records, had their own independent email systems,

---

[1] The Debtors include, Mercury Capital Advisors Group GP, LLC, Mercury Capital Advisors Group, LP, and Mercury Capital Advisors, LLC (collectively, the "Debtors").

network folders and documents, and IT infrastructure.  At no time during the course of the Debtors' ongoing operations did Investcorp have access to Debtors' email system, network, or financial records (other than what is typically shared by a company with its shareholders and lenders), or have custody or control of Debtor's emails or corporate records.

In 2023, Debtors' New York team relocated to Investcorp's offices in New York in order to reduce rental expenses.  As a result of this relocation, the Debtors' New York team used Investcorp's network access points but solely to connect to the internet and to third-party systems and services.  Other than facilitating such external connectivity, Investcorp's technology team was not responsible for maintaining, managing, or storing any of the Debtors' data or systems.

In 2023, one of Mercury's employees, who was responsible for maintaining the company's books and records, transferred to Investcorp but continued to perform those responsibilities for the Debtors through a secondment arrangement.  This arrangement reduced the Debtors' accounting expenses.  In connection with his role, this employee had access to the Debtors' books and records solely for the purpose of carrying out his duties for the Debtors.  Neither Investcorp nor its Finance team had access to, or control over, the Debtors' financial records. You appear to have misconstrued this arrangement and incorrectly suggest that Investcorp controlled the Debtors' books and records.  That was not the case.  The Debtors maintained and controlled their own books and records at all relevant times.

You also appear to suggest that management overlapped between Investcorp and the Debtors because the Debtors' CEO retained an Investcorp email address.  That conclusion is not supported by the facts.  Any review of the Debtors' CEO's email usage would show that the overwhelming majority of his business communications were conducted through his email account with the Debtors that Investcorp never had access to.  The Investcorp email address was used primarily for communications with Investcorp personnel on limited occasions and when third parties or other employees inadvertently contacted him through that address. Focusing solely on the communications sent through the Investcorp email account, while disregarding the substantially larger volume of communications conducted through the Mercury email account, presents an incomplete picture of the facts and reflects a lack of due diligence on your part.  It certainly does not support the conclusion that management of Investcorp and the Debtors was the same.

In light of the details reiterated above—none of which should be new information to you, based on the multitude of interactions you and your team have already had with former employees of the Debtors and secondees—it is baseless to suggest that during the Debtors' operations, Investcorp was "the custodian of substantially all of the Debtors' emails and corporate records" or that there was any overlap of management or integration between the two firms:  a pure falsehood on which you have based your Response.  Reply ¶ 1.  Investcorp personnel did not "handle[] all of the Debtors' accounting and certain other functions" and specifically did not handle the Debtors' "IT" or have control of "receivables purchase transactions."  Reply ¶ 9

More troubling is your disingenuous suggestion to the Court that Investcorp "ceased cooperating" with your investigation "when [you] requested further information concerning accounting issues and transactions under a receivables purchase agreement." Reply ¶ 2. Nothing is further from the truth. Investcorp has responded in good faith to every request that you or your accountants have made. Your accountants were not restricted from accessing any of the Debtors' documents and information. They were given open physical access to the Debtors' offices (you, yourself never requested access to or visited the offices). They were given access to the Debtors' CIBC bank accounts. If there were specific documents the accountants wanted, a seconded Investcorp employee helped identify them and uploaded them to a digital Box portal set up by the accountants. As far as Investcorp was aware, your accountants received everything that they required because the accountants stopped making requests after February 2025.

And then, in January 2026—after approximately a year of silence from you and your accountants—you sent Investcorp your inflammatory January 10 letter, in which you made baseless allegations against Investcorp and demanded that *Investcorp* produce documents from *its own* files. This overreaching demand for Investcorp to produce its own files is the only one that Investcorp refused. We explained to you, orally and in writing, that the documents you sought would already be contained in the Debtors' records, which you already owned.

The same is true of the documents to which you now claim to need access in your recent Reply. Specifically, you note:

- Emails of Debtors' senior management;

- Copies of all receivable purchase transaction documents including invoices;

- Schedules C/D and reconciliation of same to revenue;

- Invoices and documents showing collections for each engagement including receivables purchased outside of the receivables purchase agreement;

- Detail supporting any approved write-offs of accounts receivables owed to the Debtors;

- Documents concerning Debtors' right to collect from WestCap and placement fees.

Reply ¶ 25. All of these documents should already be located in the Debtors' files, which are part of your estate. It is therefore simply untrue that you lack access to "basic documents needed to conduct [your] investigation including senior management emails in Investcorp's custody." Reply ¶ 2. It seems that you and/or your accountants do not have a good handle on the documentation and information to which you already have access, or worse, have not diligently reviewed them. This matter could have been handled in a collegial, professional manner without wasting our and the Court's time. There is no reason for Investcorp to open its own files and do your work for you. That is also not an appropriate basis for appointing outside counsel, which will only waste further time as you ignore the only true sources of recovery for the estate.

# GIBSON DUNN

I invite you once again to speak with me today (June 15, 2026), prior to tomorrow's hearing with the Court, in order to clear up the various inaccuracies that were included in your Reply.

Regards,

Mitchell A. Karlan